# COUNTY OF KENNEBEC.

*In the matter of* JOHN HERSOM, *on writ of Habeas Corpus.*

The Act incorporating the city of Augusta, provided for the establishment of a municipal court consisting of one judge, who should have concurrent jurisdiction with justices of the peace in all matters civil and criminal within the county of Kennebec.

Justices of the peace can exercise jurisdiction over no offences not given by some statute. It is never to be presumed.

By c. 170, R. S. they are authorized to punish by fine, not exceeding ten dollars, persons convicted of certain offences, and to try all offences within their jurisdiction, and to sentence those convicted according to law, but under that Act have no authority to imprison.

By c. 167, § 14, it is provided that "all fines and forfeitures given or limited by law in whole or in part, to the use of the State, may be recovered by indictment in the district court when no other mode is *expressly* provided."

The punishment for a violation of § 2, c. 166, of the laws of 1855, being by a fine of *twenty dollars,* and *imprisonment* of the offender, puts the offence out of the jurisdiction of a justice of the peace, without some *express* provision to that effect. No such provision is found in that Act.

And a conviction under that section, of a violation of its provisions, before the judge of the municipal court of Augusta, and sentence thereon, are illegal and void.

THE petitioner represented to the Court that he was illegally imprisoned in the jail at Augusta, and prayed for a writ of *habeas corpus.*

By a copy of the mittimus annexed to the petition, it appeared that a complaint had been made under oath against

him for an illegal sale of intoxicating liquors, before the judge of the municipal court for the city of Augusta, under § 2, of c. 166, of the Acts of 1855, on which complaint he was convicted before the judge of that court, and sentenced to pay a fine of twenty dollars and costs of prosecution, and to be imprisoned in the jail at Augusta for thirty days.

Under this sentence the petitioner was now in prison.

The writ was granted and made returnable before the full Court on June 25, 1855, and notice ordered to the State's Attorney for the county of Kennebec.

On the return of the writ, the case was fully argued by *Vose,* County Attorney, against the discharge of the prisoner, and by

*Lancaster,* for the petitioner.

The prisoner was remanded to await the advisement and determination of the Court. On June 28, the opinion of the Court, (TENNEY, J., on account of indisposition not being present at the hearing, and taking no part in the decision,) was drawn up and delivered by

SHEPLEY, C. J. — From the return made by the prison keeper to the writ of *habeas corpus,* it appears, that the prisoner was committed to prison on June 9, 1855, by virtue of a mittimus issued by the judge of the municipal court for the city of Augusta, reciting, that the prisoner had been tried and found guilty by him, of having on the fifteenth day of May, 1855, sold one quart of brandy to George W. Doe, contrary to the form of the statute; and had been tried by him and sentenced to pay a fine of twenty dollars and costs of prosecution, taxed at five dollars and sixty-one cents, and to be imprisoned in the county jail for the term of thirty days, and stand committed till said order be complied with.

By the eleventh section of the Act incorporating the city of Augusta, approved on July 23, 1849, it is provided, that there shall be established a municipal court to consist of one judge, " who shall have concurrent jurisdiction with justices of the peace in all matters civil and criminal within the

county of Kennebec;" and jurisdiction in all cases of simple larceny where the property shall not exceed in value the sum of twenty dollars. His general jurisdiction of offences, other than larceny, is to be ascertained from the jurisdiction which justices of the peace have; and they, by the R. S. c. 170, are authorized to punish by fine "not exceeding ten dollars" persons convicted of certain enumerated offences; and to try all offences within their jurisdiction and to sentence those convicted according to law. They are not authorized thereby to impose a fine exceeding ten dollars, or to imprison, for any time whatever. By particular provisions in other statutes they are authorized as in cases of larceny to punish by a fine not exceeding twenty dollars, and by imprisonment not exceeding six months. But their general jurisdiction is not thereby enlarged. No statute has been cited or noticed, giving to them a general jurisdiction of offences with power to impose a fine to the amount of twenty dollars, or to imprison a person for any time. Such a jurisdiction, if it exists, must be derived from some statute specially conferring it.

By the Act for the suppression of drinking-houses and tippling shops, approved on June 2, 1851, provision was made by the fifth section, that "any forfeiture or penalty arising under the above section may be recovered by an action of debt, or by complaint before any justice of the peace or judge of any municipal or police court, in the county where the offence was committed." By the section referred to, as above, the sale of intoxicating liquors was prohibited. Here the jurisdiction was specially conferred; but by the Act approved on March 16, 1855, that Act and the Act approved on March 31, 1853, were repealed, saving all processes then pending, and leaving them in force for the punishment of all offences committed under them. Justices of the peace cannot, therefore, have any jurisdiction by virtue of the Acts of 1851 and 1853, of any such offence committed since the first day of May, 1855, when the Act of 1855 took effect. If they have jurisdiction to punish

for offences committed since that time by the sale of intoxicating liquors in violation of the provisions of the second section of the Act of 1855, it must be derived from some provision contained in that Act. No such jurisdiction is conferred, or attempted to be conferred, by the second section, which prohibits the sale.

There is a provision contained in the nineteenth section, that "any penalties or forfeitures, the recovery of which is not otherwise provided for in this Act, may be recovered by complaint or indictment in any Court proper to try the same." This does not determine what Court is proper to try the same, but leaves it to be ascertained from existing laws. No provision has been found in any section of the Act of 1855, expressly conferring upon justices of the peace, or municipal or police judges, any jurisdiction of the offence of which the prisoner was found to be guilty.

By the eighth section of the Act they have jurisdiction to try and punish persons found to be guilty of certain offences therein named; but this does not include offences against the provisions of the second section. It is insisted that jurisdiction is conferred upon them, by implication, from provisions contained in several of the sections.

Provision is made in the twentieth section for an appeal from the decisions of such judge or justice of the peace, and for recognizances to be by them taken in cases, which might arise out of violations of the provisions of the second section.

Provision is also made for appeals from their decisions, by the twenty-ninth section, by language appropriate to authorize them in cases arising under the eighth section over which they have jurisdiction. Being suited to authorize appeals in such cases, no inference can be drawn that appeals from decisions made under the second section were intended.

By the thirty-first section, provision is made that "whenever in this Act fine and imprisonment are the punishment provided for the offence charged, it shall be the duty of the justice or court to sentence the convict to both fine and imprisonment." This language is applicable to offences arising

under the 8th section, and no inference can be drawn that it authorized punishment to be inflicted for offences against the second section.

By the thirty-second section, forms of process to be used are prescribed, and it is declared that they "shall be deemed sufficient in law, for all the cases arising under this Act, to which they purport to be adapted." Among these forms is one for a complaint to be made to a justice of the peace, that the person accused, at a certain time and place, "did sell a quantity of intoxicating liquors" contrary to the form of the statute. There is also a form for a warrant to be issued by a justice of the peace on such a complaint and a form for a recognizance to be taken by him in case of an appeal from his decision, finding the accused guilty of such an offence.

Neither of these forms contains any allegation or recital of a forfeiture of twenty dollars, or that the accused is liable to be imprisoned for thirty days. Such allegations or recitals are not necessary to their legal validity, and the omission of them is only noticed to show that no words are used in the forms conferring a jurisdiction to punish by imposing a fine of twenty dollars, or an imprisonment of thirty days. They cannot therefore inflict such a punishment by virtue of these forms. And a court cannot exercise jurisdiction over an offence when it cannot inflict the punishment prescribed for it by statute. *Com.* v. *Curtis*, Thatcher's Crim. Cases, 202.

By the words "shall be deemed sufficient in law for all cases arising under this Act to which they purport to be adapted," no more is meant, than, that they shall be deemed legal and sufficient *forms* to be used in such cases. The mere enactment of correct and legal forms to be used for the prosecution and punishment of an offence, cannot confer jurisdiction upon a court or magistrate. If so, and the words "one of the justices of the peace" were stricken out of the complaint, and the words judge of probate, or county commissioner, were inserted, then a judge of probate

or county commissioner would have jurisdiction, without any other provision of law conferring such jurisdiction upon them. The same remark would be applicable to the provision authorizing appeals to be made from the decisions of justices of the peace. A provision authorizing an appeal from the decision of a court in criminal cases, cannot give the tribunal from which the appeal is allowed to be made, jurisdiction in all such cases.

It is an established rule of law that the jurisdiction of an inferior court, or magistrate, is never to be presumed. It must be clearly exhibited.

The enactments in the various sections of the Act of 1855 do clearly show, that they were made upon the assumption or supposition, that municipal and police judges and justices of the peace had jurisdiction. If from such enactments, then, jurisdiction might be conferred by implication; then it might be, if it were capable of proof, that the provision contained in the Act of 1851, expressly conferring such jurisdiction, had been originally inserted in the Act of 1855, and had been upon deliberate consideration, stricken out for the very purpose of depriving them of such jurisdiction. It is said that the intention of the Legislature to confer such a jurisdiction is clearly ascertainable from the provisions of the Act, and that such intention should be made effectual. The intention of a legislative body is by the law regarded as a rule for a court to determine what construction the language which the Legislature has used should receive. But no rule of construction is known, or admitted, by which a clearly perceived defect, or omission in legislation to accomplish an important purpose in criminal law, has been, or can be supplied by inferring it from language used for another purpose not suited nor intended to supply that defect.

If the intention of the Legislature could be used legally for the purpose of making the law what they supposed it was, and intended it should be, instead of a rule of construction to ascertain from the language used what enactments it had really made, this difficulty would remain, that no person

can conclude, or believe that the Legislature intended, by the mere enactment of the forms, to give jurisdiction. The intention to give jurisdiction by the forms does not therefore exist. If forms alone are relied upon, the form of complaint for a single sale is not a form addressed to a municipal or police judge, and no provision is made that such form for a complaint shall be so varied as to make it applicable to such a judge.

Even in the construction of wills, in which the intention of the testator is to be preëminently the guide of the court, that intention cannot, however clearly discoverable, be made effectual, if there be found in the will no language used by which the object can be accomplished.

In the case of *Pickering* v. *Langdon*, 22 Maine, 413, the opinion states, " but the court is not authorized to supply omissions by adding words even for such a purpose. The intention is one thing; and the execution of that intention by the testatrix, another. She must execute her intentions by the use of some language to give to the Court the power to execute them to make them effectual."

If the Court were to supply a clear defect of legislation to give magistrates a criminal jurisdiction, it would exhibit an act of judicial legislation forbidden by the constitution.

The case of *Commonwealth* v. *Leach*, 1 Mass. 59, referred to by the Attorney for the State in this county as one, in which the jurisdiction of the former court of general sessions in a criminal case was implied, does not authorize such a conclusion.

The Court held, that jurisdiction had been conferred upon justices of the peace by the adoption, in that State, of the statutes of Edward III., expressly conferring such jurisdiction.

The construction of the law respecting the punishment of offences for selling intoxicating liquors, in violation of the second section of the Act of 1855, appears to be this. The Legislature has, by enactments, provided for suitable forms to be used by justices of the peace for the punishment of

such offences, and has provided for appeals from their decisions upon the supposition, that they had jurisdiction. That supposition is ascertained to be wholly unsupported and without foundation. To hold that those magistrates have thereby acquired jurisdiction, would be to make the erroneous supposition of a legislative body the foundation, and the only foundation, upon which a jurisdiction could rest empowering such magistrates to imprison the persons of the citizens. The introduction of such a principle into the administration of criminal law, cannot be admitted.

The rule of law respecting the criminal jurisdiction of courts, is thus stated by Espinasse on Penal Statutes : " with respect however to statutes giving jurisdiction, a difference must be observed as to the superior and inferior courts. The courts above may have jurisdiction by implication, as in the cases of penal statutes, mentioned ; such as *Rex* v. *Mallard*, ante fol. 9, prohibiting any matter of public concern under a penalty, but without appropriating it, and which is a debt due to the crown, and recoverable in the court of exchequer. That might be sued for in the courts above, though they are not named ; *but no inferior court or jurisdiction can have cognizance of any penalty recoverable under a penal statute, by implication.* They *must be expressly mentioned* in the statutes themselves, and *cognizance given to them in express terms.*"

This language was adopted and sanctioned by the Court in the case of *Bowers* v. *Green*, 1 Scam. 42, in which the opinion states, "jurisdiction not having been *given expressly* to justices of the peace, we are of opinion that the justice in this case had no jurisdiction." Whether the doctrine as stated by Espinasse, that superior courts have jurisdiction by implication, can be applicable to courts existing under our institutions, it is not now necessary to determine.

All doubt, if any exists, on this subject, may be removed by presenting the provision contained in statute c. 167, § 14, which is in these words : " all fines and forfeitures given or limited by law in whole or in part, to the use of

the State, may be recovered by indictment in the district court when no other mode is *expressly* provided."

By the twenty-seventh section of the Act of 1855, it is provided, that " all fines, penalties, and costs, and all sums paid on recognizances as in this Act provided, shall be paid into the county treasuries of the respective counties for the use of the State."

When therefore no other mode of recovery is *expressly* provided, such fines and penalties were to be recovered by indictment in the district court. The whole jurisdiction of that court, was by the Act of 1852 transferred to this Court, in which such fines and penalties are now recoverable by indictments; and for violation of the provisions of the second section of the Act of 1855, offenders may, on proper complaint, be brought before municipal or police Judges, or justices of the peace having jurisdiction, and may be by them bound over to answer for such offences in this Court.

*Petitioner discharged from imprisonment.*

APPLETON, J., remarked that he was not then prepared to concur.